**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**KYLE M. MYERS,**

                 **Plaintiff,**

         **v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

                 **Defendant.**

_____

**7:15-cv-1388
(GLS)**

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Conboy, McKay Law Firm | LAWRENCE D. HASSELER, |
| 307 State Street | ESQ. |
| Carthage, NY 13619 | |
| | |
| **FOR THE DEFENDANTS:** | |
| HON. RICHARD S. HARTUNIAN | ELIZABETH D. ROTHSTEIN |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Senior District Judge**

1

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Kyle M. Myers challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Myer's arguments, the Commissioner's decision is affirmed.

## II. Background

On January 24, 2012, Myers filed an application for SSI under the Social Security Act ("the Act"), alleging an onset date of November 18, 2005. (Tr.[1] at 73, 140-46.) After his applications were denied, (*id.* at 74-79), Myers requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 80-82), which was held on June 26, 2013, (*id.* at 47-72). On August 19, 2013, the ALJ issued an unfavorable decision finding Myers not disabled and denying the requested benefits, (*id.* at 32-46), which became the Commissioner's final determination upon the Appeals Council's denial of review, (*id.* at 1-4).

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

Myers commenced this action by filing his complaint on November 20, 2015 wherein he sought review of the Commissioner's determination. (*See generally* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (Dkt. Nos. 8, 9.)  Each party, seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 10, 11.)

## III.  <u>Contentions</u>

Myers contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (Dkt. No. 10 at 12-22.) First, Myers asserts that the ALJ failed to consider whether his impairments met or medically equaled the severity of a listed impairment. (*Id.* at 12-13.)  Next, Myers contends that the ALJ did not identify what limitations rendered his plantar fasciitis and genetic skin disorders severe. (*Id.* at 13.)  Third, Myers argues that the ALJ did not adequately support her residual functional capacity (RFC) determination.  (*Id.* at 13, 17-20.) Fourth, Myers maintains that the ALJ erred in evaluating medical opinion evidence.  (*Id.* at 14-17.)  Finally, Myers argues that the ALJ erred in her credibility assessment.  (*Id.* at 20-22.)  The Commissioner responds that

the ALJ's decision was supported by substantial evidence and that she correctly assessed Myers' credibility. (Dkt. No. 11 at 5-17.)

## IV. Facts

The court adopts the undisputed factual recitations of the parties and the ALJ. (Dkt. No. 10 at 1-11; Dkt. No. 11 at 2; Tr. at 37-42.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-3 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Listed Impairments

Myers contends that the ALJ erred at step three of the sequential analysis because she did not identify which of the listed impairments she

_____

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.

evaluated. (Dkt. No. 10 at 12.) Myers asserts that the ALJ failed to consider whether his impairments could meet or medically equal any of the following listings: skin disorders (section 8.00), congenital disorders that affect multiple body symptoms (section 10.00), special senses and speech (section 2.00), respiratory system (section 3.00), digestive systems (section 5.00), and immune system disorders (section 14.00). (*Id.* at 12.) The Commissioner, on the other hand, argues that substantial evidence supports the ALJ's findings that Myers' impairments did not meet or medically equal any of the listed impairments. (Dkt. No. 11 at 5-7.) In addition, the Commissioner contends that Myers fails to name a specific listed impairment, or evidence supporting it, within the broad categories of identified listings. (*Id.* at 5.)

At step three of the disability evaluation, the ALJ is required to determine whether the claimant's impairment(s) meet or equal an impairment listed in 20 C.F.R. pt. 404, subpt. P, app.1. *See* 20 C.F.R. § 416.920(d). To qualify, the claimant's impairments must satisfy all of the medical criteria of the particular listing. *See id.* § 416.925(c)(3). If the claimant's impairments meet a particular listing, such impairment is "severe

enough to prevent a person from doing any gainful activity." *Id.*
§ 416.925(a).

Here, the ALJ concluded that she "ha[d] considered all listed
impairments associated with the symptoms reported by [Myers, and] [t]he
criteria to satisfy them is not met or medically equalled." (Tr. at 39.) In
making this finding, the ALJ did not explicitly reference any listing,
however, the ALJ's discussion at steps two and four demonstrate that her
step three determination is supported by substantial evidence.[3]  *See Berry
v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (holding that an ALJ's step
three determination may be upheld despite "the absence of an express
rationale" where "other portions of the ALJ's decision and . . . clearly
credible evidence [show] that h[er] determination was supported by
substantial evidence").

At step two, the ALJ found that Myers' congenital ichthyosis was a
severe impairment. (Tr. at 37.) Nevertheless, the ALJ determined that this
impairment did not qualify under the listings at step three. (*Id.* at 39.) To
meet the criteria of ichthyosis, a claimant must have "extensive skin lesions

---

[3]  "Substantial evidence is defined as more than a mere scintilla. It means such relevant
evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904
F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

that persist for at least [three] months despite continuing treatment as prescribed." 20 C.F.R. pt. 404, subpt. P, app.1 § 8.02. According to the listings, extensive skin lesions must cause severe limitations to a claimant's gross and fine motor skills in both hands, the motion of at least two extremities, or the ability to ambulate both feet. *See id.* § 8.00(C)(1).

Indeed, Myers was diagnosed with congenital ichthyosis by Daniel Pisaniello, his treating physician, (Tr. at 327), and his skin condition is well documented, (*Id.* at 327-29, 344, 371). However, this condition has not caused severe limitations to his mobility. The ALJ noted that Dr. Pisaniello reported in his medical source statement that Myers could continuously lift and carry boxes up to ten pounds, walk for one hour without interruption, continuously use both hands to finger and handle items, and frequently use both feet. (*Id.* at 362-64.) Additionally, the ALJ relied on the medical opinion of Robi Rosenfeld, the consultative examiner who evaluated Myers. (*Id.* at 38-39.) Dr. Rosenfeld reported that Myers presented with intact hand dexterity and grip strength of 5/5 bilaterally as well as normal physical findings in his extremities. (*Id.* at 346-47.) Accordingly, Myers does not meet the listing requirements for ichthyosis.

Myers also contends that the ALJ erred by not finding his impairments met listing 2.00 for special senses and speech. (Dkt. No. 10 at 12.) The record indicates, and the ALJ identified, that Myers has some visual and hearing impairments. (Tr. at 37-38, 311-15, 316-17.) Regarding his vision, Myers presented with 20/20 vision in both eyes, but was prescribed ointment and artificial tears for his dry eyes. (*Id.* at 316-17.) This impairment does not meet the criteria for any of the visual listings. *See* 20 C.F.R. pt. 404, subpt. P, app.1 §§ 2.02-2.04. Similarly, Myers' hearing loss does not satisfy the criteria of the listings. Although Myers had documented hearing loss, he still presented with a normal hearing range of 15 decibels bilaterally. (Tr. at 314.) Consequently, Myers does not meet listing 2.10. *See* 20 C.F.R. pt. 404, subpt. P, app.1 § 2.10.

In addition, Myers asserts that the ALJ erred in finding that he did not meet a respiratory listing. *See id.* § 3.00. The ALJ noted that Myers has been diagnosed with asthma according to Dr. Pisaniello's treatment notes and Dr. Rosenfeld's evaluation. (Tr. at 37, 40.) To meet the requisite severity for the asthma listing, the claimant must, among other things, have three hospitalizations within a twelve-month period. *See* 20 C.F.R. pt. 404,

subpt. P, app.1 § 3.03(B).  Here, the ALJ explicitly found that Myers had not required hospitalization for his asthma.  (Tr. at 38, 344.)  Again, Myers does not meet the listing criteria.

Myers also has documented hypertension for which he is prescribed antihypertensive medication of lisinopril and hyrdochlorothiazide.  (*Id.* at 325, 327, 330-31, 345, 347.)  In finding that Myers' hypertension was medically managed, the ALJ relied on treatment records by Dr. Pisaniello indicating that Myers' headaches subsided after medication.  (*Id.* at 39.)  To meet the listing for chronic pulmonary hypertension, a claimant must have a mean pulmonary artery pressure equal or greater than 40 mm Hg.  *See* 20 C.F.R. pt. 404, subpt. P, app.1 § 3.09.  Here, Myers did not present medical records that tested his mean pulmonary artery pressure.  *See Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that [the claimant] has the burden of proof at step 3 that [he] meets the [l]isting requirements.").  Therefore, Myers cannot meet the listing for this respiratory impairment.

Myers also asserts that he meets the listing for digestive system disorders.  (Dkt. No. 10 at 12.)  Myers had intestine surgeries at birth which

required a gastric feeding tube and a lung biopsy. (Tr. at 344.) However, Myers does not identify anything in the record which indicates that he continues to suffer from the effects from these surgeries. (*Id.*) Myers points out that he complained of severe diarrhea and was previously treated at the Lewis County Hospital Emergency Room between January 2007 and November 2009. (Dkt. No. 10 at 6-7 (citing Tr. at 198, 215-38, 255-300, 337).) Without more, however, Myers does not meet the criteria of any of the conditions listed under digestive system disorders. *See* 20 C.F.R. pt. 404, subpt. P, app.1 § 5.00; *Naegele*, 433 F. Supp. 2d at 324.

Next, Myers contends that he meets the listing for immune system disorders. (Dkt. No. 10 at 12.) All immune system disorders require a marked limitation in at least one of three areas: activities of daily living; social functioning; or difficulties in completing tasks. *See* 20 C.F.R. pt. 404, subpt. P, app.1 § 14.00(I)(4). A claimant has a marked limitation when "the signs and symptoms of [his] immune system disorder interfere seriously with [his] ability to function." *Id.* § 14.00(I)(5). When making her RFC determination, the ALJ considered Myers' hearing testimony. (Tr. at 40-41.) There, Myers testified that he goes camping with his friends,

occasionally helps with chores including lawn care, snow removal, and grocery shopping, and completed a one-year certificate program at a state college. (*Id.* at 51-52, 56-57.) Myers' engagement in these activities demonstrate that he does not suffer from a marked limitation in any of the listed areas. Consequently, he does not satisfy the listing requirements for immune system disorder.

Finally, Myers argues that his impairments meet listing 10.00: congenital disorders that affect multiple body symptoms. (Dkt. No. 10 at 12.) This listing evaluates whether a claimant has non-mosaic Down syndrome. *See* 20 C.F.R. pt. 404, subpt. P, app.1 § 10.00. Nothing in the record suggests that Myers has Down syndrome and the ALJ did not err by failing to find Myers met this listing. *See Naegele*, 433 F. Supp. 2d at 324.

## B.    Severity Limitation

Next, Myers argues that the ALJ failed to identify what limitations render his congenital ichthyosis and bilateral plantar fasciitis severe. (Dkt. No. 10 at 12-13.) The court disagrees.

An ALJ will find an impairment severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20

C.F.R. § 416.920(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" as well as "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." *Id.* § 416.921(b). At step two of the analysis, the ALJ screens out *de minimis* claims. *See Dixon v. Shalala*, 54 F.3d 1010, 1019 (2d Cir. 1995).

Here, as discussed above, the ALJ reviewed evidence supporting Myers' skin condition that he has had since birth. (Tr. at 37-38.) The treatment notes of Dr. Pisaniello indicated that the condition resulted in ulcers, thin skin, and pruritis to his lower legs. (*Id.* at 325, 327-29, 333.) Dr. Pisaniello also observed that Myers had ichthyosis over his entire body. (*Id.* at 327.) In determining Myers' RFC, the ALJ noted that Myers testified that his skin condition caused him to bruise easily and affected his skin internally with a lack of moisture and externally with dry skin. (*Id.* at 41); *see Berry*, 675 F.2d at 469 (noting a court may look to other portions of an

ALJ's decision to find that his determination was supported by substantial evidence).  Additionally, the ALJ noted that Myers had sought treatment at the Mayo Clinic for his skin condition.  (Tr. at 41.)  Accordingly, "the evidence of record permits [the court] to glean the rationale of [the] ALJ's decision" in finding Myers' congenital ichthyosis to be severe.  *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).  Moreover, at step two, there is no basis for remand where the ALJ failed to explain *how* the severe impairment limits a claimant's ability to perform basic work activities.  This is particularly true in this case because the ALJ continued with the sequential analysis and, therefore, any error is harmless.  *See generally Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 3988952, at *3 (N.D.N.Y. Feb. 7, 2012).

Similarly, the ALJ did not commit legal error in evaluating Myers' bilateral plantar fasciitis.  The court is able to glean from the record the ALJ's rationale for concluding that Myers' bilateral plantar fasciitis is a severe impairment.  *See Mongeur*, 722 F.2d at 1040.  The ALJ relied on the treatment notes of Mark Schug, Myers' treating podiatrist.  (Tr. at 396-400.)  Dr. Schug noted that Myers presented with extreme tightness in his

Achilles heels, had difficulty moving his ankle to ninety degrees, had calluses over the soles of both feet, and a lesion on the sole of his left arch.  (*Id.* at 397.)  Dr. Schug found Myers had severe discomfort along the plantar fascia of both of his feet and prescribed stretching exercises and insoles to alleviate the pain.  (*Id.* at 397-98.)  As with Myers' congenital ichthyosis, the court finds no basis for remand because the ALJ failed to explain how Myers' bilateral plantar fasciitis limits his ability to perform basic work activities.

## C.   <u>Medical Evidence</u>

Next, Myers asserts that the ALJ erred by substituting her opinion for that of a medical examiner.  (Dkt. No. 10 at 14-15.)  Additionally, Myers contends that the ALJ failed to give controlling weight to Dr. Pisaniello, his treating physician.  (*Id.* at 15-17.)  The Commissioner counters that the ALJ's findings are supported by medical evidence and the ALJ properly weighed Dr. Pisaniello's opinion.  (Dkt. No. 11 at 7-17.)

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 416.927(c).  Controlling weight will be given to a treating physician's opinion that is "well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 416.927(c). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion," *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted), and cannot "arbitrarily substitute his own judgment for competent medical opinion," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citations omitted). "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of testimony presented to him or have explained why he considered particular evidence

unpersuasive or insufficient to lead him to a conclusion of disability.'"
*Petrie*, 412 F. App'x at 407 (citation omitted).

First, Myers contends that the ALJ improperly attributed his fatigue to
a lack of conditioning without a citation to supporting medical evidence.
(Dkt. No. 10 at 14; Tr. at 41.)  However, the record supports the ALJ's
assessment.  In 2007, Myers underwent diagnostic DNA testing where
doctors could not ascribe his fatigue to a heart or muscle problem and
instead opined that "[d]e-conditioning could be involved."  (Tr. at 370.)
Consistent with this assessment, Myers indicated in his function report that
he experienced fatigue immediately following physical activity such as
climbing one flight of stairs.  (*Id.* at 185-86.)  Accordingly, substantial
evidence supports the ALJ's assessment, and she did not substitute her
own judgment for that of a medical professional.  *Cf. Balsamo*, 142 F.3d at
81.

Additionally, the ALJ properly weighed the medical opinion evidence.
The ALJ afforded little weight to Dr. Pisaniello's opinion, Myers' treating
physician, who opined that Myers could not perform any full time work or
engage in any strenuous work.  (Tr. at 41, 367.)  Dr. Pisaniello's restrictive

16

opinion, however, is inconsistent with his own treatment notes, Myers' reported activities of daily living, and Dr. Rosenfeld's report.

In his treatment notes, Dr. Pisaniello found that Myers' hypertension and pulmonary functioning improved when he took his blood pressure medication and used a bronchodilator. (*Id.* at 324, 325, 327, 329-30, 337, 392, 394.) Furthermore, at a visit on March 31, 2011, Myers denied that he experienced symptoms related to his hypertension including chest pain or shortness of breath, and during several visits, Dr. Pisaniello observed that he was not in acute respiratory distress. (*Id.* at 324, 332, 337, 339, 394.) Myers also reported to Dr. Pisaniello that he enrolled in a one-year college program in which he attended classes four days a week. (*Id.* at 325.) While he was in high school, Myers notified Dr. Pisaniello that he played basketball during his free periods which were up to three times per day. (*Id.* at 329.) Although Myers' mother stopped him from playing basketball when his skin ulcers opened, he continued to participate in gym class. (*Id.*)

Dr. Pisanello's restrictive opinion is also inconsistent with Myers' own functional report. Although Myers reported that he experiences fatigue

when he stands for extended periods, he is nonetheless able to perform light housework such as laundry, feeding his cats, and some cleaning. (*Id.* at 182, 184.)  Myers also reported that he completed errands including shopping for food, clothing, and car parts between one and two times per week.  (*Id.* at 183.)  Additionally, in his disability report, Myers stated that he stopped working at a business that he started, not because he was disabled, but because he did not generate enough sales.  (*Id.* at 169.)

Finally, Dr. Pisanello's opinion is inconsistent with Dr. Rosenfeld's findings from a May 2012 medical examination of Myers.  (*Id.* at 344-47.) Dr. Rosenfeld opined that Myers had a moderate limitation for heavy lifting because of his low back pain and should avoid respirator irritants because of his asthma.  (*Id.* at 347.)  He noted that Myers complained of fatigue and attributed it to muscle aches.  (*Id.* at 344.)  However, Dr. Rosenfeld found that Myers had full range of motion in his shoulders, elbows, and wrists as well as his hips, knees, and ankles.  (*Id.* at 346.)  In addition, he noted that Myers' joints were stable and not tender, and there was no indication of muscle atrophy.  (*Id.* at 346-47.)  Furthermore, Dr. Rosenfeld observed that Myers had normal gait, could walk on his heels and toes without difficulty,

and required no assistance getting on or off the examination table.  (*Id.* at 345.)  Consistent with Myers' own functional report, Dr. Rosenfeld noted that Myers cooks several times per week, occasionally completes chores such as cleaning, laundry, and shopping, and socializes with his friends. (*Id.*)

Accordingly, the ALJ correctly applied the treating physician rule because Dr. Pisanello's restrictive opinion was inconsistent with other substantial evidence.  *Cf.* 20 C.F.R. § 416.927(c)(2); *Halloran*, 362 F.3d at 32.  Moreover, the ALJ explicitly stated that the she assigned little weight to his opinion because it "is not supported by the medical evidence of record in which there is no listing of impairments that could cause the profound limitations stated." (Tr. at 41.)  She, instead, attributed greater weight to Dr. Rosenfeld's opinion in part because of his expertise in Social Security disability evaluations and his examination of Myers.  *See* 20 C.F.R. § 416.927(c)(1), (e)(2)(i).  Therefore, there is no reversible legal or evidentiary error in the ALJ's decision to afford little weight to Myers' treating physician.

**D.**  **RFC Determination**

Next, Myers contends that the ALJ erred in evaluating his RFC because she did not perform a function-by-function assessment of his abilities. (Dkt. No. 10 at 17-20.) The Commissioner counters that the ALJ's RFC determination is supported by substantial evidence and she set forth the rationale for her determination. (Dkt. No. 11 at 12-13.)

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ found that Myers could perform the full range of sedentary work with respiratory limitations to account for his asthma. (Tr. at 41.) Although the ALJ did not provide a function-by-function analysis of Myers' physical capabilities, she examined relevant factors as discussed above, *see supra* Part VI.C, and her decision is supported by substantial

evidence. While the ALJ could have provided further clarification with respect to Myers' capabilities, this shortcoming does not amount to legal error. *See Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013) (finding failure to conduct a function-by-function analysis is not legal error where the court can still engage in meaningful judicial review of the ALJ's determination).

**E.    Credibility**

Finally, Myers disputes the ALJ's assessment of his credibility because he contends that the ALJ failed to support her findings and apply the requisite factors. (Dkt. No. 10 at 20-22.) The Commissioner opposes and argues that the ALJ applied the correct legal standard to evaluate Myers' credibility. (Dkt. No. 11 at 13-13-17.) Again, the court agrees with the Commissioner.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," she "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by

the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotations marks and citations omitted).  In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements."  SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).  Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10CV444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi)).

Here, the ALJ found that Myers suffered from medically determinable impairments, but concluded his statements about the limitations arising from such impairments were not credible.  (Tr. at 41.)  In making this assessment, the ALJ determined that Myers' allegations of pain were not supported by the medical evidence.  (*Id.*)  Specifically, she found that his

activities of daily living suggest a greater functional capacity as he testified that he goes camping every weekend with friends and rides all-terrain vehicles. (*Id.*) Furthermore, the ALJ found that, despite his complaints, Myers never received treatment for back pain and his plantar fasciitis is managed with orthotics and exercise. (*Id.*) In addition, the ALJ noted that Myers testified that he may be able to work at a desk job for no more than ninety minutes per day, however, he had previously attended day-long college classes with breaks in between. (*Id.*) The ALJ also considered that Myers was able to occasionally help with outdoor chores such as lawn care and snow removal for up to thirty minutes and play basketball for brief amounts of time. (*Id.*)

Although the ALJ did not engage in an analysis of each factor articulated in 20 C.F.R. § 416.929(c) to assess Myers' credibility, "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that [s]he considered the entire evidentiary record." *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted).

Here, the ALJ acknowledged the two-step process to assess Myers' credibility, and it is evident from her thorough discussion that the determination was legally sound. Moreover, as discussed above, *see supra* Part VI.C, the ALJ's determination that Myers' subjective complaints are not credible is supported by substantial evidence.

**F.    Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## V.Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Myers' complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 29, 2017
Albany, New York

Gary L. Sharpe
U.S. District Judge